# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**AMY KAROZOS**
Greenwood, Indiana

ATTORNEY FOR APPELLEE:

**ROBERT J. HENKE**
DCS Central Administration

**PATRICK M. RHODES**
Indiana Department of Child Services
Indianapolis, Indiana

**FILED**

Mar 28 2013, 9:22 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF INVOLUNTARY TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF G.P. (Minor Child), AND HIS MOTHER, | ) ) ) ) ) | |
| J.A., (Mother), | ) ) | |
|     Appellant-Respondent, | ) ) | |
|        vs. | ) ) | No.  49A02-1208-JT-643 |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) | |
|     Appellee-Petitioner. | ) ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn Moores, Judge
The Honorable Larry Bradley, Magistrate
Cause No. 49D09-1108-JT-31826

**March 28, 2013**

**ROBB, Chief Judge**

Case Summary and Issues

J.A. ("Mother") appeals the termination of her parental rights. She presents two restated issues on appeal: 1) whether she was denied due process when the trial court failed to appoint her an attorney for the underlying Child in Need of Services ("CHINS") proceeding; and 2) whether sufficient evidence supported the termination of her parental rights. Concluding that her due process rights were not violated, and that there was sufficient evidence to support the termination, we affirm.

Facts and Procedural History

G.P. was born in 2009. In October 2010, the Department of Child Services ("DCS") removed G.P. from Mother's home and filed a petition alleging that G.P. was a CHINS. That same month, an initial hearing was held at which Mother waived counsel and admitted to the CHINS allegations, and G.P. was found to be a CHINS. In November 2010, there was a dispositional hearing at which G.P. was formally removed from Mother's care, although he had been in the care of DCS in the intervening month. G.P. was placed with his paternal grandparents. Mother was allowed supervised visitation, and was ordered to complete certain services.[1] Ordered services included weekly contact with the DCS Family Case Manager ("FCM"), notifying the FCM of changes in contact information, keeping all

appointments with DCS, maintaining suitable housing and a stable source of income, discontinuing drug use, participating in home-based counseling, completing a parenting assessment and all recommendations developed as a result of the assessment, and participating in random drug screens.

In December 2010, Mother's visitation was suspended for failure to adequately engage in services. In February 2011, a review hearing was held. At that point, Mother was one missed session away from being discharged from an intensive outpatient drug treatment program due to missing appointments. Mother requested counsel at this hearing, and the court found that she was indigent and determined that she was entitled to appointment of counsel. It appears, however, that the court failed to actually appoint counsel. In May 2011, Mother appeared pro se at a review hearing, and did not mention the lack of representation. By that hearing, Mother had been discharged from all services. She had failed to complete her intensive outpatient program and had failed to reschedule it. Mother indicated that she wanted to re-engage with services. The plan for permanency at the end of this hearing was reunification, and a permanency hearing was scheduled for August 16, 2011.

In August 2011, Mother moved to her mother's house in Virginia without notifying DCS. On August 16, 2011, Mother failed to appear for the permanency hearing. DCS requested that the plan be changed to adoption, and G.P.'s guardian ad litem ("GAL") agreed. The plan for permanency at the end of the hearing was set for adoption. Two days later, DCS filed a petition for involuntary termination of Mother's parental rights. In

---

[1] G.P.'s father was incarcerated at the time of the dispositional hearing. Father ultimately consented to

September 2011, an initial hearing was held on the termination; Mother failed to appear and the hearing was continued. At the continued hearing later that month, Mother failed to appear and DCS requested a default hearing. The court continued for an initial hearing in December with a default hearing scheduled for January 2012. In October 2011, Mother was served with summons by publication regarding the scheduled hearings. Sometime after that, Mother returned the certified mail card for a summons that had been sent to her mother's house in Virginia.

In December 2011, Mother failed to appear at the continued initial hearing. On January 9, 2012, the scheduled default hearing was re-scheduled for February. On January 29, 2012, Mother filed a letter with the court requesting counsel, and the court appointed counsel on February 9 and converted the default hearing to a pre-trial hearing. In February 2012, Mother began an addiction program in Virginia. Later that month, Mother failed to personally appear at the pre-trial hearing, but was represented by counsel and the matter was set for trial. On April 1, 2012, counsel filed a motion to dismiss or continue the case, arguing that Mother had been deprived of her due process rights when counsel was not appointed for the CHINS case. Following a hearing, the court denied the motion but bifurcated the trial to allow counsel time for discovery. The termination trial was held over three days: April 9, June 11, and June 14, 2012. On July 10, 2012, the court entered an order terminating Mother's parental rights. This appeal followed.

adoption, was dismissed from the termination proceedings before trial, and does not participate in this appeal.

4

Discussion and Decision

I. Due Process

A. Standard of Review

CHINS proceedings are separate and distinct from termination proceedings. Hite v. Vanderburgh Cnty. Office of Family & Children, 845 N.E.2d 175, 182 (Ind. Ct. App. 2006). Parents are entitled to representation in termination proceedings, Indiana Code section 31-32-4-1, and counsel may be appointed in other proceedings, Indiana Code section 31-32-4-3 (emphasis added). Indiana Code section 31-34-4-6 lists the legal rights of which parents in CHINS cases must be informed, including the right to be represented by an attorney upon the request of the parent, if the court finds that the parent is indigent.[2] We have noted that there is a presumption against court-appointed counsel in CHINS cases and we have stated that under Indiana Code section 31-32-4-3, whether the trial court abused its discretion in appointing counsel in CHINS proceedings depends on the unique facts and circumstances of each case. In re M.M., 733 N.E.2d 6, 10-11 (Ind. Ct. App. 2000). "If lack of counsel is likely to lead to particularly damaging uncontested allegations and if such allegations be deemed established and not subject to subsequent challenge, those allegations might virtually assure a subsequent termination decision." Id. at 11 (quoting E.P. v. Marion Cnty. Office of

---

[2] We note that the case law does not clearly define how sections 31-32-4-3 and 31-34-4-6 are to be read in conjunction with each other. Is it mandatory to appoint counsel for indigent parents when requested, but only for indigent parents, and only when requested? Is that right waivable, if, after the request, there is no appointment but, as here, the parent does not raise the lack of appointment with the court? Is it fundamental error if the court denies or overlooks the appointment for an indigent parent who has requested counsel? Based on our reading of the current case law, the lack of appointment will be reviewed for an abuse of discretion, but this is an area that would benefit from clarification by the legislature or our supreme court.

<u>Family & Children</u>, 653 N.E.2d 1026, 1033 (Ind. Ct. App. 1995)).  In that case, the court may well abuse its discretion by failing to appoint counsel.  <u>Id.</u> at 11.

The Due Process clause of the U.S. Constitution prohibits state action that deprives a person of life, liberty, or property without a fair proceeding.  When the State terminates a parent-child relationship, it must do so in a manner that meets the requirements of due process.  <u>C.T. v. Marion Cnty. Dep't of Child Servs.</u>, 896 N.E.2d 571, 586 (Ind. Ct. App. 2008), <u>trans. denied</u>.  Due process within the context of termination of a parent-child relationship requires a balancing of three factors:  (1) the private interests affected by the proceeding, (2) the risk of error created by the State's chosen procedure, and (3) the countervailing governmental interest supporting use of the challenged procedure.  <u>Id.</u>  It is well established that both the private interests and the State interests are substantial in termination cases.  <u>See</u> <u>id.</u>; <u>In re A.L.H.</u>, 774 N.E.2d 896, 900 (Ind. Ct. App. 2002).  The factor at issue then is the risk of error.  The question here then is whether the court abused its discretion in failing to appoint counsel to Mother at the CHINS proceeding, and if so whether that failure created an unacceptable risk of error in the termination proceedings.

### B.  Failure to Appoint Counsel for Mother

In order for Mother's parental rights to be terminated, DCS needed to prove by clear and convincing evidence:

> (A) that one (1) of the following is true:
> > (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
> > (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required,

6

including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). We recognize that some of the evidence presented at the May 2011 hearing, where Mother was not represented, supports sub-sections B and C. However, Mother does not appear to contest that she was discharged from services or that she failed to complete services, as presented at that hearing. More importantly, the evidence from that hearing alone did not assure a subsequent termination. We note that at the end of the hearing, the permanency plan for G.P. was still reunification. It was the sum total of Mother's actions (or inaction) by the time of the termination hearing, nearly a year later, that ultimately led to termination. This included her continuing failure to complete services in that time period, her lack of communication with DCS, and the questionable appropriateness of the home that she could provide at that time. Evaluating Mother at the time of the termination hearing, evidence of her status in May 2011 was but one factor. The overarching issue seems to have

7

been her continuing failure to meaningfully engage with services and attempts to remedy the conditions that lead to removal.

As for hearings following the May 2011 hearing, Mother argues that having counsel would have allowed her to inform the court of things such as her reasons for moving, the steps she was taking toward sobriety, and her current living arrangement with her mother. It is not clear why counsel was needed to inform the court, when Mother could have informed the court herself if she had appeared for the hearings. The benefit to having counsel is generally having help in navigating the system, and at hearings in objecting to evidence and examining witnesses. Here, Mother showed no interest in navigating the system, and no error in evidence that was presented at the hearings. Mother's main argument seems to be that counsel could have informed the court of Mother's situation, even if Mother was not there. However, all of the things that Mother claims could have been brought to the court's attention at the hearings were eventually brought to the court's attention at the termination trial. Despite Mother's presented evidence, the court still determined that termination was the appropriate outcome. Mother makes no argument for how the outcome would have been any different had the court been presented with the evidence earlier. While we are disappointed that the trial court did not follow through with appointment after determining that appointment was appropriate, any error in that failure appears to be harmless and we cannot say that it changed the balance of risk of error in the termination proceedings.

## II. Sufficiency of the Evidence

### A. Standard of Review

In determining whether the evidence is sufficient to support a judgment terminating parental rights, we neither reweigh the evidence nor judge the credibility of the witnesses. In re D.J., 755 N.E.2d 679, 683 (Ind. Ct. App. 2001), trans. denied. We consider only the evidence favorable to the judgment and the reasonable inferences to be drawn therefrom. Id. When reviewing the findings of fact and conclusions of law upon which a termination of parental rights is premised, we engage in a two-tiered standard of review: we first determine whether the evidence supports the findings, and second, whether the findings support the judgment. Id. We will reverse only upon a showing of clear error. Id. A finding is clearly erroneous when there are no facts or inferences drawn therefrom that support it. In re A.J., 877 N.E.2d 805, 815 (Ind. Ct. App. 2007), trans. denied. A judgment is clearly erroneous only if the findings of fact do not support the trial court's conclusions thereon, or the conclusions thereon do not support the judgment. Id.

In evaluating the circumstances surrounding the termination, the court must subordinate the interests of the parents to those of the child. R.G. v. Marion Cnty. Office, Dep't of Family & Children, 647 N.E.2d 326, 328 (Ind. Ct. App. 1995), trans. denied. Termination of parental rights is proper where the child's emotional and physical development is threatened. Id. The trial court need not wait until the child is irreversibly harmed such that his physical, mental, and social development is permanently impaired before terminating the parent-child relationship. Id.

To determine whether a reasonable probability exists that the conditions justifying a child's continued placement outside the home will not be remedied, the trial court must judge a parent's fitness to care for her children at the time of the termination hearing and take into consideration evidence of changed conditions. In re D.D., 804 N.E.2d 258, 266 (Ind. Ct. App. 2004), trans. denied. However, the trial court must also evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child. Id.

B. Evidence Supporting Termination of Mother's Parental Rights

Mother contests a handful of the specific findings and conclusions of the trial court. We believe that these findings and conclusions would be supported by the record, but moreover we agree with the State that, even if these findings are omitted, the remaining findings are sufficient to support the conclusion of the court that termination was appropriate. The record indicates that Mother did not consistently participate in services when she was in Indiana, and that she was discharged from all services and did not re-engage. She moved out of state without informing DCS, and did not keep in contact with DCS. At some point after the termination hearing was scheduled, she began a treatment program in Virginia, and successfully completed it just prior to the trial. However, that was long after the CHINS case started, and also months after the termination petition was filed. She has a history of entering rehab programs and then relapsing regardless of whether she completed the program or not, and so we agree with the trial court that it would take time after this last program to be convinced that she is truly sober. Both DCS and the GAL agreed that G.P. was in a safe and

10

appropriate home with his grandparents, who were ready to adopt him, and that termination was in his best interest. We conclude that the evidence supports the court's findings, and that those findings support the conclusions in favor of termination.

## Conclusion

Concluding that Mother was not denied her due process rights when the trial court failed to appoint her counsel in the CHINS case, and that sufficient evidence supports the termination of her parental rights, we affirm.

Affirmed.

MAY, J., and PYLE, J., concur.